IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Cheryl Hammond Hoskins, individually and as personal representative of the estate of Thomas R. Hoskins, | ) ) ) ) | C/A No.: 3:08-2442-JFA |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| Sharon Snipes King; Wheels, Inc.; and Siemens Medical Solutions USA, Inc., | ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the court on the following motions:

1) Siemens' motion for summary judgment [dkt. # 80],

2) Siemens' motion for protective order [dkt. # 83],

3) Hoskins' motion to compel [dkt. # 87],

4) Wheels Inc.'s motion for final judgment [dkt. # 121],

5) King and Siemens' joint motion for partial summary judgment as to punitive damages [dkt. # 123], and

6) King and Siemens' joint motion for partial summary judgment as to Cheryl Hoskins' survival claim [dkt. # 122].

The parties have fully briefed each motion and the court heard oral argument on November 2, 2009. This order serves to announce the court's ruling on the motions in this case.

I.   Factual and Procedural Background

Sharon King ("King") struck and killed Thomas Hoskins at approximately 2:15 p.m.

on October 21, 2007 while he was cycling on U.S. Highway 521 between Lancaster and Charlotte. Cheryl Hoskins ("Hoskins"), as the personal representative of the estate of her husband Thomas Hoskins, brought suit against King, Wheel's, Inc. ("Wheels"), and Siemens Medical Solutions USA, Inc. ("Siemens") for damages arising out of the accident. At the time of the accident, King drove a Chrysler Pacifica automobile owned by Wheels and leased by Siemens for King's use. Siemens provided King the use of the car as a function of her duties as a Field Service Tech 2 servicing medical equipment for Siemens and she opted to pay an additional monthly fee to use the vehicle for personal use.

The record indicates that King was talking on her Siemens-issued mobile phone with her close friend Beth Lichtenberger immediately before the incident and that she was in the process of attending to her dogs in the front seat or manipulating the car stereo when she struck Thomas Hoskins. No facts have been alleged to suggest that King was under the influence of any alcohol or drugs during the time period at issue. No evidence suggests that speeding played any role in the accident. King appears to have veered out of her lane at the time she struck Thomas Hoskins.

At the time of the incident, King was returning home to North Carolina from her parent's home in Lancaster, South Carolina, where she attended a belated wedding reception held in her honor. The week before the accident, King took scheduled vacation leave in anticipation of the wedding celebration and had removed the tools she used to service medical equipment from her car. King fueled the car using her Siemens-issued gas card 13

minutes before the incident.

King's driving records while at Siemens reveals tickets for speeding issued on March 14, 2007 and March 11, 2005. She was also involved in an automobile collision on January 22, 2007 resulting in no injury, which occurred during work hours and may have occured while King spoke on her mobile phone.

In her initial complaint, Hoskins asserted negligence against King seeking actual and punitive damages for wrongful death, and the pain and suffering of Thomas Hoskins, as the personal representative of his estate. Hoskins also alleged negligent training and supervision against Wheels Inc. In her amended complaint, Hoskins repeated the allegations of the initial complaint and added Siemens as a defendant, seeking damages vicariously under the doctrine of respondeat superior and directly under a theory of negligent supervision.

II. Discussion

    A. Siemens' Motion for Summary Judgment is Granted

        1. Hoskins Asserts Liability under a Theory of Respondeat Superior

Siemens moves for summary judgment on the theory that King was not on company business and owed Hoskins no duty of care as a third party. In order to establish negligence in South Carolina, a plaintiff must establish: (1) a duty the defendant owes the plaintiff; (2) a breach of that duty by the defendant by a negligent act or omission; (3) that such breach was the actual and proximate cause of the plaintiff's injury; and (4) injury or damages. Doe v. Marion, 645 S.E.2d 245, 250 (S.C. 2007). "If there is no duty, then the defendant in a

negligence action is entitled to a directed verdict." Steinke v. Dep't. of Labor, Licensing and Regulation, 520 S.E.2d 142, 149 (S.C. 1999). South Carolina recognizes five exceptions to the general rule that there is no general duty to control the conduct of another: (1) where the defendant has a special relationship to the victim; (2) where the defendant has a special relationship to the injurer; (3) where the defendant voluntarily undertakes a duty; (4) where the defendant negligently or intentionally creates the risk; and (5) where a statute imposes a duty on the defendant. Marion, 645 S.E.2d at 250. Under the second exception, South Carolina recognizes the doctrine of respondeat superior, which holds the master liable for the acts of his servant.

In order to establish liability under respondeat superior, a plaintiff must establish that the servant was acting about the master's business and within the scope of her employment. Lane v. Modern Music, Inc., 136 S.E.2d 713, 716 (S.C. 1964). "If a servant steps aside from the master's business for some purpose wholly disconnected with his employment, the relation of the master and servant is temporarily suspended; and this is so no matter how short the time, and the master is not liable for his acts during such time." Id. If the employee is going about her own business, then she cannot render the master liable. Id.

At the time of the fatal collision between King and Thomas Hoskins, King was either speaking to her friend on her mobile phone, adjusting the stereo, talking to her two dogs in the passenger seat, or some combination of all three. The purpose of her trip was to return home after attending her own wedding reception. Hoskins alleges no facts that would

4

suggest that King was in the scope of her employment for Siemens at the time of the accident. The facts taken in the light most favorable to Hoskins only support an inference that King may have failed to comply with Siemens' policies regarding the declaring of personal use of the car and the corporate gas card, but neither of these facts support an inference that she was acting in the scope of her employment on that Sunday. Accordingly, the court finds that King was outside the scope of her employment, and unable to bind Siemens in tort under a theory of respondeat superior.

2. Hoskins Asserts Supervisory Liability Against Siemens

Hoskins asserts a direct claim of liability in her negligent supervision claim against Siemens under Restatement Second of Torts § 317, as adopted in South Carolina. In Degenhart v. Knights of Columbus, 420 S.E.2d 495, 496 (S.C. 1992), the South Carolina Supreme Court found that while the common law ordinarily imposes no duty to act, there are certain circumstances where an employer may be held liable for negligent supervision. In Degenhart, the court cited to § 317, and found that an employer may be held liable for negligent supervision if the employee, outside the scope of her employment, intentionally harms another when she: (1) is upon the premises in possession of the employer or upon which the employee is privileged to enter only as his employee, or (2) is using a chattel of the employer and (a) knows or has reason to know that he has the ability to control his employee, and (ii) knows or should have known of the necessity and opportunity for exercising such control. The South Carolina Supreme Court recently revisited this duty and

stated that:

> In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public.

James v. Kelly Trucking, Co., 661 S.E.2d 329, 330 (S.C. 2008). Accordingly, the question is whether Siemens knew or should have known facts about King that would suggest that entrusting King with a cell phone and automobile would pose an unreasonable risk of harm to the public.

When Siemens hired King, she had no points on her driver's license. However, from the time of her hiring to the time of the accident that killed Hoskins, King received two speeding tickets: one on March 11, 2005 (a 5-points for speeding in a work zone), and one on March 14, 2007 (a 2-point violation for speeding). Additionally, on January 22, 2007, King rear-ended another car while exiting the interstate while possibly using her mobile phone. King reported that the accident happened at 11:00 a.m., but her phone records show an incoming call from the non-emergency line at the Greensboro, NC police department at 10:53—presumably concerning the accident. Prior to the incoming call from the police department, King's phone records show that her phone remained in use from 10:29 a.m continuously until 10:51 a.m. The court finds it reasonable to infer that King was on the phone when she hit the other car. Siemens may have known or had reason to known about the tickets and the January 22, 2007 accident. However, even if Siemens knew or should have known that King was not the best driver, King's past conduct does not rise to a level

at which Siemens would be put on notice that she presented an unreasonable risk of harm to the public. King has driven many miles while working for Siemens, and her driving record, while blemished, did not foreshadow the event that brought this case before this court.

Hoskins failed to present any evidence that speed played a role in the death of Thomas Hoskins and, accordingly, the two speeding tickets may be minimized for the purposes of the court's § 317 analysis. Accordingly, Hoskins would have this court find that a low-speed collision, resulting in no injury or property damage, and that appears to have occurred while King spoke on the phone, suffices to put Siemens on notice that King presented an undue risk of harm to the public. This, the court will not do. Accordingly, because the record does not demonstrate a sufficient nexus between conduct that would put Siemens on notice of a need to control King and the conduct that caused the harm suffered in this case, the court dismisses Hoskins' claim of supervisory liability.

> B. Hoskins' Motion to Compel is Denied and, Based on the Foregoing, Siemens' Motion for Protective Order is Moot

In Hoskins' motion to compel, she seeks information concerning Siemens' policies and procedures regarding the use of company automobiles and cell phones, Siemens' enforcement of those policies, Siemens' knowledge of the risks of the joint use of phones and cars, profits related to products sold to mitigate those risks (such as headsets), and prior records of employee accidents while driving company cars.

The general rule provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and such information

7

need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Where information sought does not pertain to a claim or defense, such information cannot be compelled on an assertion of relevance. Hoskins asserts two claims against Siemens: the first under the doctrine of respondeat superior, and the second under a theory of direct liability for negligent supervision, as adopted in Degenhart. Accordingly, for the information sought to be discoverable, it must be relevant to these claims.

King must have collided with Thomas Hoskins while in the scope of her employment in order for Hoskins to prevail on her respondeat superior claim. Based on the evidence in the record, the court found above that King was not going about Siemens business at the time of the accident, nor for that matter at any time close to the accident. Any evidence weighing on this determination would necessarily concern King's actions leading up to and including the time of the accident. No argument advanced by Hoskins concerning the desired discovery touches on the existence or potential existence of any information useful to the court in determining whether King collided with Thomas Hoskins while in the scope of her employment with Siemens. Accordingly, for the purposes of the respondeat superior claim, the court finds the requested evidence irrelevant.

For Hoskins to prevail on her supervisory liability claim, she must show that Siemens knew or should have known that entrusting King with a car and a cell phone presented an undue risk of harm to the public. Accordingly, inquiries into this claim must focus on King's

conduct as it relates to her use of the Pacifica and cell phone. To that end, inquires concerning the collisions of other employees; general employee compliance with company automobile and cell phone usage policies; enforcement of such polices; and the Siemens rationale for creating such policies fail to shine light on the merits of the negligent supervision claim.

Hoskins argues that any information Siemens possessed regarding any dangers presented by operating an automobile in conjunction with a cell phone should serve to charge Siemens with a heightened duty to supervise its employees. Hoskins, in effect, argues that such knowledge requires Siemens to accurately forecast a high-speed collision resulting in two fatalities from a minor, low-speed collision resulting in no property damage or personal injury. However, the caselaw does not support Hoskins' position. Supervisory liability under Degenhart and its progeny requires the court to focus specifically on what the employer knew or should have known about the specific conduct of the employee in question. See, e.g. Rickborn v. Liberty Life Ins. Co., 468 S.E.2d 292 (S.C. 1996)(finding that similar conduct resulting in harm sufficed to put defendant on notice under Degenhart); Charleston Registry for Golf and Tourism, Inc. v. Young Clement Rivers and Tisdale, LLP, 598 S.E.2d 717, 723 (S.C. App. 2004)(finding supervisory liability inappropriate where the record contained no evidence that the defendant knew, or should have known, of its employee's conduct causing the alleged harm); Brockington v. Pee Dee Mental Health Center, 433 S.E.2d 16 (S.C. App. 1993)(concluding that no evidence existed to support the

9

contention that the Center knew or should have known of the necessity to exercise control over the employee prior to the time he assaulted the patient); Doe by Doe v. Greenville Hospital System, 448 S.E.2d 564 (S.C. App. 1994)(holding that the hospital knew or should have known of the necessity to control based on a similar prior instance of inappropriate sexual conduct with a minor).

Hoskins invitation to the court to subscribe to foreign caselaw notwithstanding,[1] what general knowledge Siemens may have possessed concerning any safety issues arising from the contemporaneous use of an automobile and mobile phone matters little to the court's analysis. The the correct inquiry focuses on Siemens' specific knowledge, or duty to have knowledge, as to King's use of Siemens' chattels. Hundreds of millions of drivers use their mobile phones while driving each day without incident. The prudence of doing so, and danger to the public, depends on the individual and the conditions, and liability must remained premised on the interplay between these variables, not on the possession of academic knowledge by a third party. Whether Siemens possesses knowledge concerning any risks associated with the simultaneous use of cell phones and automobiles has no bearing on whether Siemens possessed or should have possessed knowledge that King's use of her Siemens' chattels constituted a danger to the public. For the foregoing reasons, the court

---

[1] Hoskins cites to Bradley v. H.A. Manosh Corp., 601 A.2d 978 (Vt. 1991) and Foradori v. Harris, 523 F.3d 422 (5th Cir. 2008)(interpreting Mississippi's adoption of § 317) in her reply to King's response to her motion to compel to support her argument that the type of conduct engaged in can constitute notice. South Carolina has yet to enunciate such a rule in its interpretation of § 317.

denies Hoskins' motion to compel. Moreover, because the court granted Siemens' motion for summary judgment above as to both claims against it, the court finds Siemens' motion for protective order moot.

   C.   Wheels, Inc.'s Motion for Final Judgment is Denied

Wheel's Inc. has moved for the court to enter final judgment in this case dismissing it from this action. Under Fed. R. Civ. P. 54(b), a court has the power to dismiss any of several parties when the court finds no just reason for delay. However, this power must be exercised in light of the strong policy against piecemeal appeals. Wheels, Inc. argues that the facts supporting this court's order dismissing all claims against it have not changed and no reasons remain not to grant it peace and finality. Hoskins argues that Wheels, Inc. has failed to provide any evidence concerning any harm or hardship it would suffer by waiting until the January 2010 trial and that keeping Wheels, Inc. in the lawsuit prevents the possibility of piecemeal appeals. The court finds that the strong policy against piecemeal appeals outweighs any minimal harm Wheels, Inc. may endure in waiting the brief period until the trial of this case. Accordingly, Wheels, Inc.'s motion for final judgment is denied; with judgment to be entered at the close of the entire case.

   D.   King and Siemens' Joint Motion for Summary Judgment on Punitive Damages
        is Denied as to King, and Granted as to Siemens

King and Siemens seek partial summary judgment as to Hoskins' punitive damage claim. However, as this order dismisses Siemens from the case based on the court granting its motion for summary judgment as to both claims against it, the below analysis only

pertains to punitive damages as they apply to King. Under South Carolina law, to support an award of punitive damages, the plaintiff must show by clear and convincing evidence that a defendant's conduct was wilful, wanton, or in reckless disregard of the victims rights. Cohen v. Allendale Coca-Cola Bottling, Co., 351 S.E.2d 897, 900 (S.C. App. 1986). Conduct is wilful, wanton, or reckless when committed with a deliberate intention and under such circumstances that a person of ordinary prudence would be conscious of it as a reckless disregard of another's rights. Id. However, a defendant need not consciously realize that her acts invade the rights of another if a person of ordinary prudence would have come to that realization. Bryant v. Muskin Co., 873 F.2d 714 (4th Cir. 1989).

    1.    A Federal Standard Controls the Issue of Sending Punitive Damages to the Jury

The parties disagree as to which standard controls sending the question of punitive damages to the jury. Hoskins argues that the most recent South Carolina Supreme Court and Court of Appeals cases control, and a court must submit the question of punitive damages to the jury mechanically when triggered by evidence of per se negligence. See Wise v. Broadway, 433 S.E.2d 857, 859 (S.C. 1993); Fairchild v. South Carolina Dept. of Transp., WL 2709393 (S.C. App. 2009). The Wise case explains the rationale for this policy as standing on the premise that one must know the law, and that violation of a safety statute would necessarily constitute "some evidence that the defendant acted recklessly, willfully, and wantonly." Id. From this proposition, the South Carolina Supreme Court determined that where the case presents evidence of a statutory violation, the jury would have a basis of

liability for punitive damages and the question of punitive damages could not properly be withheld from the jury.

The defendants assert that federal, not state, law controls the sufficiency of evidence to send punitive damages to the jury. The court agrees. "In a diversity action, or in any other lawsuit where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law." Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989). The Fourth Circuit has repeatedly held that in diversity cases, the federal standard controls the question of the sufficiency of evidence to go to the jury. See Charleston Area Med. Ctr. v. Blue Cross and Blue Shield Mutual of Ohio, Inc. et al., 6 F.3d 243, 247 (4th Cir. 1993)("In diversity cases in which the sufficiency of the evidence to create a jury question is presented, this court resolves the issue based on the federal rule. That rule presents the question whether there is evidence on which a jury can properly base a verdict."); Owens by Owens v. Bourns, Inc., 766 F.2d 145, 149 (4th Cir. 1985)("Even under diversity jurisdiction the sufficiency of the evidence to create a jury question is a matter governed by federal law."); Wratchford v. S.J. Groves & Sons, Co., 405 F.2d 1061, 1064–65 (4th Cir. 1969)(applying Byrd v. Blue Ridge Rural Elec. Corp., 356 U.S. 525 (1958), and holding that the sufficiency of evidence to go to a jury is determined by a federal standard); Summers v. Watkins Motor Lines, 323 F.2d 120, 123 (4th Cir. 1963)("In the federal courts, distribution of functions between court and jury is controlled by federal,

not state, law."). The precedent compels the conclusion that the sufficiency of the evidence for which the question of punitive damages can be submitted to a jury should be based on the federal and not the state standard.

2. King's Conduct Presents a Jury Question as to Punitive Damages

As federal procedural law governs the disposition of this motion, Rule 56(c) supplies the appropriate standard. Applied to the facts at hand, King would need to prove that the parties do not dispute any material facts and that King's actions do not rise to a level of willful, wanton, or reckless conduct as a matter of law. The facts in the record prevent King from making such a showing. While the court finds the material facts undisputed, these facts do not lead the court to the conclusion that King's actions could not be characterized as willful, wanton, or reckless as a matter of law.

None of King's individual actions leading up to the accident were in and of themselves necessarily reckless in isolation. However, taken in concert, a jury could find King's actions willful, wanton, or reckless. King's counsel has taken pains to demonstrate that the stretch of highway where the accident occurred includes several elevation and course changes and presented the argument that such conditions made the accident more fortuitous in attempt to shift culpability off of King. However, the twist and gradient changes of the road also cut the other way—prolonged inattention to the road under such circumstances could support an inference of recklessness. In light of evidence in the record that the cyclists were visible to other drivers for more than a mile, and King's deposition testimony as to the

variety of distracting tasks she involved herself in up to and including the time of the collision, the court finds summary judgment on the matter of punitive damages inappropriate as to King.

    E.    King and Siemens' Motion for Partial Summary Judgment as to Hoskins' Survival Claim is Granted

King and Siemens jointly moved for summary judgment as to Hoskins' survival claim; however, as this order dismisses Siemens from this case, the following only affects King. South Carolina recognizes a cause of action for injuries to a person that survive the person's death, with damages being recoverable by the legal representative of the deceased. S.C. Code Ann. § 15-5-90 (2005). Damages in a survival action include recovery for the deceased's conscious pain and suffering and medical expenses. Croft v. Hall, 37 S.E.2d 537, 540 (S.C. 1946). Hoskins has not directed the court to any evidence in the record that would suggest that Thomas Hoskins survived the initial impact with the automobile. Accordingly, awarding damages for conscious pain and suffering experienced post-impact does not find support in the law.

However, in addition to seeking the more established post-impact survival damages, Hoksins seeks damages for the split-second between when the rear tire of the bicycle touched the front bumper of the Pacifica and the impact of Thomas Hoskins on the windshield. However, this position does not find support under South Carolina law. Hoskins has cited many cases, from other jurisdictions which recognize recovery for pre-impact fright. In nearly all of these cases the victims knew they were going to die for a period of at least some

15

seconds, not fractions of a second. Moreover, there was evidence in almost all of the cases that the victim saw their ending coming and there was no question that the victim consciously perceived the cause of his or her death—such as a car crashing in to the back of a tractor trailer, an imminent plane crash, or a pedestrian trapped on roadway.

In this case the King's car closed from the rear at a high rate of speed, causing a tremendous impact—throwing Thomas Hoskins seventy-five feet in the air—and instantly killing him. A survival claim requires that the deceased consciously endure pain and suffering. Due to the severity of the impact, the court finds that the evidence does not demonstrate that the decedent had time to consciously perceive the means of his death, much less consciously suffer pain. Accordingly, for the reasons above, King's motion for summary judgment regarding the survival action is granted. The court also hereby deems Siemens' motion for summary judgment regarding the survival action moot.

III. Conclusion

Based on the foregoing, the court grants Siemens' motion for summary judgment [dkt. # 80]; denies Hoskins' motion to compel [dkt. # 87]; finds Siemens' motion for protective order and request for costs moot [dkt. # 83]; denies Wheels, Inc.'s motion for final judgment [dkt. # 121]; denies King's motion for summary judgment concerning punitive damages [dkt. # 123]; and grants King's motion for summary judgment regarding the survival claim [dkt. # 122].

The remainder of the issues in the case are scheduled for the January/February term

16

of court, with jury selection on January 12, 2010.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

November 16, 2009
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge